MATSUMOTO, J.

REYES, M.J.

**ORIGINAL** IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Benjamin Alexander Stathatos

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

See attached

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. **CV 18-3332**

*(to be filled in by the Clerk's Office)*

Jury Trial: ☐ Yes ☑ No
*(check one)*


RECEIVED JUN 06 2018 PRO SE OFFICE

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   |   |   |
   |---|---|
   | Name | Benjamin Alexander Stathatos |
   | Street Address | 20-04 21st ave #3C |
   | City and County | Astoria, Queens |
   | State and Zip Code | New York, 11105 |
   | Telephone Number | 347-898-4839 |
   | E-mail Address | benalexsta@hotmail.com |

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

   Defendant No. 1

   |   |   |
   |---|---|
   | Name | William Gottlieb Management |
   | Job or Title (if known) | Real Estate Management Company |
   | Street Address | 150 Perry Street |
   | City and County | Manhattan, New York |
   | State and Zip Code | NY 11104 |
   | Telephone Number | 212-989-3100 / 646-344-1914 |
   | E-mail Address (if known) | |

   Defendant No. 2

   |   |   |
   |---|---|
   | Name | Lauren Liebhauser |
   | Job or Title (if known) | Special Investigator - Special Victims Bureau |
   | Street Address | One Hogan Place |
   | City and County | Manhattan, New York |

2

State and Zip Code NY · 10013
Telephone Number 212-335-9303
E-mail Address liebhauser@dany.nyc.gov
(if known)

C. **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

Name William Gottlieb Management
Street Address 160 Perry Street
City and County Manhattan, New York
State and Zip Code New York 10014
Telephone Number 212-989-3100 / 646-344-1414

II. **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:
Imparting or conveying false information, obstruction of justice, perjury, subornation of perjury

☑ Relevant state law *(specify, if known)*:
Wrongful termination, perjury, intimidation, harassment, witness tampering, evidence tampering, defimation of character

☑ Relevant city or county law *(specify, if known)*:
Wrongful termination, perjury, intimidation, harassment, witness tampering, evidence tampering, defimation of character

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.
☑ Termination of my employment.
☐ Failure to promote me.
☐ Failure to accommodate my disability.
☐ Unequal terms and conditions of my employment.
☑ Retaliation.
☑ Other acts *(specify)*: Intimidation, defimation of character, witness tampering, perjury, evidence tampering

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) August 8th 2014 until the present

4

C. I believe that defendant(s) *(check one)*:

☑ is/are still committing these acts against me.
☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐ race _____
☐ color _____
☐ gender/sex _____
☑ religion  Santeria _____
☐ national origin _____
☐ age. My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
☐ disability or perceived disability *(specify disability)*
_____

E. The facts of my case are as follows. Attach additional pages if needed.

In the beginning of 2014 I made a Silivato - a promise - to Our Lady of Mercy to wear white from head to toe for a year and seven days. From that point forward, my place of employment became hostile, wrongfully terminated me, and continued discriminating against me.

See attached.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

5

IV. **Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

Due to appealing the Department of Labor decisions regarding my unemployment benefits for three years, the deadline to file with the EEOC has passed

B. The Equal Employment Opportunity Commission *(check one)*:

☑ has not issued a Notice of Right to Sue letter.

☐ issued a Notice of Right to Sue letter, which I received on *(date)* _____

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

V. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am seeking damages in the sum of eight million dollars. The defamation of character, perjury to deny me my unemployment benefits, using the police to intimidate me, the ongoing damage to my reputation, emotional distress, mental anguish, and have prevented me from obtaining employment through false statements made to the Department of Labor.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: June 1, 2018.

Signature of Plaintiff    *Benjamin Alexander Stathatos*
Printed Name of Plaintiff    Benjamin Alexander Stathatos



Benjamin A. Stathatos
        Plaintiff

William Gottlieb Management Co., LLC
Kenneth Denning
Bebi Alladeen
Demetrius Salas
Astala Din

        Defendants

Kenneth Denning-Controller - William Gottlieb Management Co., LLC
Umer Naseen- Employee - William Gottlieb Management Co., LLC
Bebi Alladeen- Receptionist - William Gottlieb Management Co., LLC
Demetrius Salas - Senior Forensic Examiner at Business Intelligence Associates
Astala Din - Former Accounts Receivable Supervisor - William Gottlieb Management Co., LLC

I was employed by William Gottlieb Management since July of 2012 as an accountant receivable staff member. On August 8th 2014, I was wrongfully terminated from William Gottlieb Management Co., LLC I was informed by Mr. Denning that I had viewed websites that are against company policy. I filed for my unemployment on August 11th, qualified and began receiving unemployment benefits. On September 4 2014, I received a letter from the Department of Labor indicating that there was an issue with my unemployment insurance. My benefits were being withheld until they investigate the matter regarding my discharge from William Gottieb Management co.

September 12,2014, I received a letter from the Department of Labor indicating that I was not going to receive any unemployment benefits. William Gottlieb management alleges that I was terminated based on misconduct. That I used employer's computer/electronics for inappropriate and nonwork related activities. I requested a hearing with the Department of Labor on September 17, 2014. The hearing was scheduled for October 16, 2014. During my hearing at the New York State Unemployment Insurance Hearing 400 Oak Street in Garden City, New York. Case number 014 – 26251 This is when I became aware of the allegations being made by William Gottlieb management for the reason of my termination. Misconduct Reason: use of employer's computer/electronics for inappropriate and nonwork related activities.

**October 16,2017 Dept. of Labor hearing Mr. Denning Sworn testimony:**

August 8, 2014. It was reported to me around 1:00 pm that Mr. Stathatos continue to violate company policy by two eyewitnesses that he was viewing pornographic website on his primary computer all day, on a reoccurring basis. Mr. Stathatos continue to create a problematic atmosphere in the office by

viewing these websites in full view of female employees, or any employees. There is proved on the web browser history on August 8, 2017 of pornography. Mr. Denning stated he only had the statements from the two eyewitnesses. Then there was an opportunity to look again at my primary computer and upon that search they found evidence of the use of proxy sites which are a way to avoid the software filters that would prevent the user to view of inappropriate material. This was done after my termination.

**October 22, 2013 Mr. Stathatos received a warning that relate to pornography:**

On June 25, 2014 Mr. Stathatos was given a written warning for the similar exact activity. Mr. Denning described the compensation regarding the warning. He was informed at 4:30pm and present was Mr. Umer Naseen. Mr. Stathatos was informed of how series the issue was in accordance to following of company policy and that the company was aware of the viewing of inappropriate pornographic websites in full view of other female employees, and that this behavior made them extremely uncomfortable. Upon receiving written statements from eyewitnesses, the company did a search of the primary computer that was done by the IT technician, and a search was also done to this secondary computer that Mr. Stathatos and other member of our staff use. Mr. Denning alleges that both searches resulted in web browser history that indicated the viewing of graphic pornographic material and found the usage of proxy sites which are used to avoid the filters that we use in the company to prevent these viewing. Evidence of the primary computer and secondary computer browser history was printed out for the June 25, 2014 incident and August 8, 2014 incident that led to my termination. Employees Exhibit 4 web browser history Identified as 1 of 7, 3 of 7, 4 of 7 5 of 7, and 7 of 7 August 14, 2014. The web browser history did not show any pornographic websites. The administrative law judge addressed this information to Mr. Denning, which then stated that he was not 100% certain that he was not a technical individual.

Mr. Denning enter into evidence Exhibit 5, which he alleges is additional evidence of me accessing inappropriate websites, stating that both browser histories shows multiple consistent, continuous accessing of very graphic and pornographic websites. Mr. Denning's description that he alleges that they're pornographic images from my primary and secondary work computers. The first page of his Exhibit 6, page 1 of 14 faxed to the Department of Labor. "There is a list of advertisements of women for men referring to as the new ad and there are at least 25 of them on this page alone." The very first one is an advertisement that says, "I want friendship and sex." Then further down the list, there are one that says "I love I know how good sucking and fucking", "please sexy", "one of met this weekend casual corner "please size me", "in need of the sex" and "mistress on duty." This evidence presented did not contain any information as to what computer station it came from. Mr. Denning's indicated that it was from the secondary computer. A computer that is access by many employees. The secondary computer location is in a small room where the IT equipment and copy machines are. Mr. Denning's explanation as to the use of the secondary computer that there were only two people who primary use the computer. One of them being myself and the other one was Astala Din - my former supervisor. Both of us had a primary for entering checks on a daily basis, and used this computer for the purpose of scanning checks in the company's system. When asked if she was accessing pornographic websites, she denied and stated no witness ever saw her accessing pornography. The initials ML was provided by Mr. Denning's as to the other coworker that had access to this secondary computer. My direct supervisor Astalla Din also had access to this secondary computer which Mr. Denning's stated it was possible.

Mr. Karasik, representing William Gottlieb Management, stated "testimony that other employees who have regular access to this secondary computer is a female that was ask whether she was accessing these websites, inappropriate, pornographic websites, she denied it. These websites that Mr. Denning provided indicates appears to be websites from men looking at pornographic material regarding women. I think that the extent that there's any concerns over a secondary person having access to this information that merely goes to the sufficiency of the evidence. It ought not to be a bar for submission of the evidence itself". Mrs. Din did not work for the company and was not available to testify. Mr. Karasik requested to have Ms. Din's statement entered into evidence. The administrative law judge would consider adding Mrs. Din's as compound evidence after Mrs. Alladeen testifies. Mr. Karasik went on to ask Mr. Denning if there was any other information regarding my termination on August 8 that he wants to add. Mr. Denning stated that it was brought up to his attention by the two female employees that they were being placed in an uncomfortable situation and having to review these illicit activities and they were offended that it occurred.

It was reported to Mr. Denning by two eyewitness who both sit ten feet away from me from me and my primary computer - Bebi Alldeen and Astala Din. They both have direct line of sight to see me that I was viewing inappropriate websites and using proxy sites to avoid the blockage that were on our computer. According to Mr. Denning's statement Mrs. Alladeen and Mrs. Din came to him and reported that I was viewing inappropriate websites and were. Mr. Denning advised them to put their complaints in writing. Then an internal review of both primary and secondary computers was done and evidence was found of inappropriate websites on both primary and secondary computer.

The office that I worked in consists of many surveillance cameras. One is directed at my station. I asked Mr. Denning's if there was any video footage of me accessing or utilizing any computer for inappropriate websites. Mr. Denning stated he did not know, nor did he view any footage at a prior point in time.

On June 17, it was brought to his attention by two direct eyewitnesses that I was viewing pornographic material in my computer. A copy of the warning was in the hearing file. Page 5 of 15 Exhibit 1. Identified as William Gottlieb management letterhead memo format dated June 25, 2014. Having the number 5/15 on the bottom right hand corner. Mr. Denning testimony as to my alleged conversation that these inappropriate websites were pornographic. Pornography as related to me never took place. Mr. Denning also testified that he reviewed my primary and secondary computer and that the company had evidence of me viewing pornography in my work computers also that the company has strong and sufficient evidence. Mr. Denning stated that I signed the warning and received a five-day suspension. Administrative Law Judge noted that the warning letter was not signed by me, and the documents were not Bates stamped.

A second document was entered (as employer's Exhibit 2) a signed copy of employer's Exhibit 1. Employer's Exhibit 3, 3 pages identified as other electronic and telephonic communications on the top center of the form and on the bottom.

When I questioned Mr. Denning regarding if the timing of visitation of any of these pornographic websites ever correspondent with any copies of deposits that would've been saved onto the N: drive,



specifically if any video footage from the surveillance camera that was directly behind me. Mr. Denning responded, "We haven't done an investigation to that level". Mr. Karasik intervened to state that "it's clear that the video footage wasn't checked". Mr. Denning was allow to stay in the room while the other witnesses testified.

**March 11, 2015 Labor Department hearing**

Mr. Denning's testified that my termination date had a final date, but that it was bought about by a range of activities, which during the final week caused the employer to make the decision to terminate: Various reoccurring incidents of violation of company policy regarding the activities or inappropriate use of the computer.

As per Mr. Denning: "The primary computer showed various websites, not necessarily of a pornographic nature. It shows the appearance of proxy websites, which are, from my understanding argues to obscure all try to hide what it is that's being viewed. It's purposely used to not leave a trace or Trail of what it is that's being viewed. The secondary computer had direct evidence of visiting of phonographic websites. A computer that was used by others." The documentation presented by my former employer to support his testimony was downloaded on August 9, the day after I was terminated. Mr. Denning was not sure if the other person using the secondary computer could have used the sites that the employer is claiming was of pornographic nature. According to Mr. Denning. "I'm just showing this evidence of what's on the computer and the usage of the computer." The information taken into account by the employer discharging me was primarily of the two-eyewitness reporting and testimony, one of whom was not preset during my first hearing. There was evidence gathered after my termination from the computers in support of his termination. The employer was not aware of this evidence when making the decision to discharge me.

**October 15,2014 Labor Department hearing Bebi Alladeen's sworn testimony via telephone**

Ms. Alladeen's testified that she had a full view of my computer and observed a lot of pornographic contests. From before June 2014 she described seeing "lots of naked women, lots of pornographic views of naked women, breasts and vagina." She went later and made a verbal complaint to the HR department. After 2014 she continued to observe and was subject to me every day/all day long viewing pornographic websites every time she lifted her head up. She alleges that she made numerous complaints to HR and a written complaint to Mr. Denning. She would e-mail Nancy Maradiaga from HR another coworker to look at my computer. These e-mails were never entered into the hearing file, nor were any complaints entered into the record. Mrs. Alladeen went on to state "I am a woman and I should not be subject to looking at these things…I have two daughters at home. I just felt very violated." She later stated she observed me on the same pornographic websites. The frequency of me accessing the pornographic websites "15 to 20 times per day." Mrs. Alladeen testified that she made numerous complaints to HR no history of her complaints was entered in the hearing file. On March 11, 2015 Mrs. Alladeen testified that she doesn't recall any statement that she testified October 16, 2014, and could not corroborate any previous statements.

Mr. Karasik requested to enter into evidence Ms. Astala Din's statement as to witnessing me viewing pornographic websites. Ms. Din was not available to testify. The administrative law judge Ms. London

called back Mrs. Alladeen to testify on Ms. Din's behalf.  Ms. Din had a full view of my computer and would complaint about the pornographic material on my monitor all the time and because she was a religious woman it would hurt her to see this at the workplace. Ms. Din reported these incidents to Mr. Denning and Ms. Maradiaga head of HR.

Nancy Maradiaga left the company prior to August 8, 2014. She never brought to my attention that there was an allegation by Mrs. Alladeen and Ms. Din of me watching pornographic websites. Mrs. Alladeen did not follow-up regarding her complaint and did not know if their complaint was brought up to my attention. Ms. Din was my immediate supervisor and never addressed allegations to me directly. Ms. Alladeen stated "I don't think she would've approached Mr. Stathatos about that she would've brought it to somebody higher up than herself. She wouldn't have done that "work is work", "porn is porn". It's two different things we are dealing with." Ms. Alladeen or my direct supervisor, Ms. Din, never looked at my computer browser history, or the security camera directly over my shoulder she had access to, along with all the cameras in the office, to correspond with the e-mails she sent regarding my viewing of pornographic material.

**March 11, 2015 Labor Department hearing Demetrius Salas sworn testimony**

Demitrius Salas is employed with Business Intelligence Associates in New York City as a senior forensic examiner. As per his testimony: "Standard procedure when we received the computer is we run it through our intake process, to photograph it and preserve all available information so that if anybody needs to look at it at a later date. It's as close to original as possible"

The description Mr. Salas testified to during the hearing on March 11, 2015: "there were Scantily clad women, nudity involved as well." Websites were viewed and pictures were downloaded. The way that we have the information listed here shows the source from the computer where it pulled up, but this wouldn't fully resolve back to the website. The date range of review was June 2014 to August 8, 2014. Mr. Salas stated that he had evidence, but did not bring it with him.

William Gottlieb management alleges a pattern of misconduct of prior incidents and up to the final incident on August 8, 2014 that led to my termination regarding pornography. All allegations are inconsistent with both documentary evidence (Hearing Exhibit 2), and the testimony of the employer's witnesses. The employer repeatedly tried to make evidence of activities on days besides, August 8, 2014. March 11, 2015 evidence presented by employer after I was fired produce three pieces of evidence to support its allegations that I use pornographic websites on company's computer/the testimony of Bebi Alladeen, the employee's receptionist, my web browser history (Employer's Exhibit 4), and the results of a forensic investigation completed by Demetrius Salas, a senior forensic examiner at Business Intelligence Associates (Employer's Exhibit 5). Of these three pieces of evidence only Ms. Alladeen's ledger observations were allegedly known to the employer at the time, I was fired. Hearing Exhibit 4 and 5 were both created after I was fired. It is also notable that one of the reasons that the appeal board remanded the case was that the administrative law judge had considered or replied upon "documented evidence that I viewed sexually explicit websites at my work computer." Mr. Salas did not testify, and Employer Exhibit 5 was never produced or discussed, at the October 16, 2014 hearing. Therefore, the record does not contain any "documented evidence that I viewed sexually explicit websites at my work

computer" in which the administrative law judge relied in her previous decision to deny my unemployment benefits after the October 16, 2014 hearing. In the absence of this evidence, the administrative law judge has apparently searched the records for other evidence, discovered after I was fired and after the October 16, 2014 hearing, to support her previous decision sustaining the initial determination. By virtue of this - the testimonial and documentary evidence produced by the employer is inconsistent.

On October 16, 2014 the employer produced one first-hand witness Ms. Alladeen to support its allegations that I view pornography on my work computer. Ms. Alladeen initially testified that she saw naked women, breasts, and vaginas on my work computer. When the administrative law judge asked Ms. Alladeen what she saw her on August 8, 2014, Ms. Alladeen testified that she saw those same things and again referred to "naked women". During the March 30, 2015 hearing, when the administrative law judge asked Ms. Alladeen what she saw on August 8, 2014, Ms. Alladeen testified that she did not recall seeing anything on my computer monitor on that date. Ms. Alladeen's testimony is also inconsistent with the documentary evidence produced by the employer to support his allegation that I viewed pornographic websites on my work computer. At the October 16, 2014 hearing the employer produced a document that proposed to be the web browser history of my work computer (Employer Exhibit 4) to prove that I viewed pornographic websites on that computer. It is not apparent from the documents itself that any of the websites listed therein are pornographic. Mr. Denning admitted that he was unconcerned whether any of the websites listed in employer Exhibit 4 were pornographic - Transcript October 16, 2014 hearing 44.

At the March 11, 2015 hearing, Mr. Salas produce a document that purported to show images downloaded by me on my work computer on August 8, 2014 (Employer Exhibit 5). Transcript of March 11, 2015 hearing 61-64. Although Ms. Alladeen had previously testified that she saw her naked women, breasts and vaginas. The employer argued that Employer Exhibit 5 represented only a sample of the evidence, and this was backed by Mr. Salas' statement that the conclusion of his forensic examination was that I viewed pornographic websites on my computer on August 8, 2014. Mr. Salas admitted on cross examination that he did not have any additional evidence to support the allegations besides Employer's Exhibit 5 - Transcript of March 11, 2015 hearing 83–85. When the administrative law judge confronted Mr. Salas with Employer Exhibit 4 Ben. I same to compare it to Employer Exhibit 5, the only connection he identified was that a logo for the Metal Slug Wiki website. Transcript of March 11, 2015 hearing 64–69. Under cross-examination, Mr. Salas concerns that there were no other connection between the two documents, despite the fact that a allegedly reflected my activities for the time and date. Transcript of March 11, 2015 hearing 76–77

The credibility call made by the Administrative Law Judge is not supported by the record. The Administrative Law Judge considered or relied upon documents not properly introduce or made part of the record.

In the findings of the five sections of the decision, the Administrative Law Judge wrote: on August 8, 2014, the control of, KD, received another complaint from BA that the claimant viewed pornographic material on his computer. The employers video camera that directed on the claimant's workstation show that the claimant had his work on the computer screen with occasional work-related pop-ups and in the background of his work-related screen he had another screen. Images found on the claimant's

workstation computer attached to this website on August 8, 2014 shows an image of a naked man on a bed, showing his bare buttocks and another image of two men where nothing covering their chests areas. In the opinion section of the decision administrative law judge wrote: Credible evidence establishes that the employer discharge the claimant on August 8, 2014 because two female workers observed the claimant using on the employer's computer/electronics for inappropriate and nonwork related activities. The forensic images pulled from my workstation computer for the date of, August 8, 2014 was inconsistent with another employer's exhibit. There is no evidence in the records that I was fired for viewing non-pornographic, non-work- related websites. There is also no evidence in the records that by noon or should have known that viewing non-pornographic, non-work related web site would cause me to be fired. The facts are not supported by the record, and there is no reasonable connection between those facts and Ms. Alladeen's allegations.

In early September of 2016, Special Investigator of the Special Victims Bureau Detective Lauren Liebhauser left her business card at my door, with her cell phone number and a request to call her. She stated that my computer was in evidence, and contained images of child pornography. I promptly hired Jonathan Fink as my attorney, and he informed me that the Detective had asked if I could come in for questioning. No effort has been made by the Detective to return his calls or inquiry, which is inconsistent with such serious charges, especially when Mr. Salas' testimony under cross-examination presents no evidence to support my former employer's allegations of viewing pornographic material apart from Employer's Exhibit 5.

The basis of my termination is faulty and inconsistent as per the transcript and the record. William Gottlieb Management, Umer Naseen and Bebi Alladeen, Mr. Denning and Mr. Salas all provided fraudulent omission and misrepresentation to the Labor Department that created a chain of events that lead to my hardship. Unfounded allegations of pornography were used to frame an argument with no evidence. Allegations of child pornography and the abuse of the Legal System through Detective Leibhauser were later used to intimidate me and force me to spend time and money to face what turned out to be unanswered phone calls and silence. Unemployment benefits denied, I had to rely on my mother and brother for basic needs. I have not been able to secure a job until December of last year. The findings from the Labor Department are public knowledge. For years I could not explain why I was terminated to new potential employment that checked my references from William Gottlieb Management or searched my name online - further tarnishing and defaming my credibility, character and reputation.

I am suing for damages in the sum of 8,000,000 for Wrongful Termination, Sexual Harassment, Sexual Discrimination and Defamation of Character. All resulting from fraudulent omission and misrepresentation to the Labor Department.



⑧



(212) 335-9303
Fax (212) 335-3609
liebhauserl@dany.nyc.gov

**LAUREN LIEBHAUSER**
Senior Investigator
Special Victims Bureau

NEW YORK COUNTY
DISTRICT ATTORNEY'S OFFICE

One Hogan Place
New York, NY 10013

BENJAMIN S~~TAMATOS~~ HATOS
PLEASE CALL

(917) 560-2913 CELL

(9)

**Second Page**  
Mail Date: August 21, 2014

EFF. DT.   08/11/2014      LO#   0831 4
SOCIAL SECURITY NO.   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
ER NO.   E48-63516 4

Information has been received by the Department of Labor that the claimant was discharged for violation of an employer rule or policy.

1. Claimant's physical last day of work: 08/08/2014
   Claimant's first day of work: 7/30/2012

2. Claimant's job title: Administrative Asst.

3. Claimant's job duties: Accounts Receivables, Filing, Scanning, batch posting.

4. Claimant's work location: 160 Perry Street New York NY 10014

5. Name of claimant's Supervisor: Kenneth Denning

6. Rate of pay: amount $ 17.00 per ☒ hour ☐ day ☐ week ☐ year

7. What were the claimant's hours and days of work?    Optional

| | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| Start Time | 8:00 Am | 8:00 Am | 8:00 Am | 8:00 Am | 8:00 Am | 8:00 Am | OFF |
| End Time | 5:00 Pm | 5:00 Pm | 5:00 Pm | 5:00 Pm | 5:00 Pm | 5:00 Pm | OFF |

8. How was the claimant informed of the discharge? ☒ In Person ☐ By Phone ☐ By Letter
   By Whom? Kenneth Denning   Title: Controller
   On what date? 8/8/2014
   If there was a delay between the times when the decision was made and when the claimant was notified, please explain why.
   ~~Policy - The Used of Company equipment by employees for personal use or non work-Related activities are Prohibited.~~

9. What rule or policy did the claimant violate?
   Policy - The Used of Company equipment by an employee for personal use or Non-work Related activities are prohibited

10. On what date did the claimant violate this rule or policy? 8/8/2014 + 2 times prior.

11. Where did the violation occur?
    At the company office location 160 Perry Street New York, NY 10014.

HRG EX#___ ER EX#___
CLMT EX#___ COL EX#___
ALJ:
INITIALS___ DATE 3/11/15

BCDNAS

NYS   10-13   MC75

NYS

8/15

Third Page  
Mail Date: August 21, 2014

EFF. DT.   08/11/2014    LO#   0831 4  
SOCIAL SECURITY NO.   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  
ER NO.   E48-63516 4

12. Explain specifically how the claimant violated this rule or policy.  
On 8/8/2014 the employee used the company equipment for inappropriate and non-work related activities including viewing pornography.

13. Did the claimant admit his/her guilt in the matter?   ☑ YES   ☐ NO  
If "YES", please answer the following questions.  
a. What explanation did the claimant give?  
The employee admit is guilt but did not give any explanation.  
b. Why did you not accept the claimant's explanation?  
Because the employee was give two written warnings (attach) about conducting/viewing non-work related activities with company equipment.

14. Was the claimant made aware of the rule or policy?   ☑ YES   ☐ NO  
If "YES", please answer the following.  
a. On what date was the claimant informed of this policy? 7/30/2012 (At time of Employment.)  
b. How was the claimant informed of this policy?  
This policy is in the company's handbook given to each of our employee at the time of hire.  
If the claimant was informed in writing, please supply a copy of the policy.

15. What effect did the violation have on the organization's operations or its interests?  
This violation creates a less productive organization and has a negative impact on co-work in the department and the rest of the company.

16. How should the claimant have known that his/her actions would lead to his/her discharge?  
The claimant was warned twice before and was aware that this type of non-work related activities is against company policy.

17. Had the claimant had any previous, similar violations?   ☑ YES   ☐ NO  
If "YES", please answer the following.  
a. On what date(s)? 4/2/2014 and 6/17/2014  
b. Had the claimant been warned regarding the violation(s), (either oral or written)?   ☑ YES   ☐ NO  
If "YES", please answer the following.  
1) On what date(s) was the claimant warned? 4/4/2014 and 6/25/2014  
2) How was the claimant warned?  
☐ Oral: Please indicate the details of the oral warning.  
_____  
☑ Written: Please supply copies of the written warnings.

BCDNAS  
NYS  10-13  MC75                                                                    NYS

**Fourth Page**  
Mail Date: August 21, 2014

EFF. DT.   08/11/2014      LO#   0831 4  
SOCIAL SECURITY NO.   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  
ER NO.   E48-63516 4

c. Had any disciplinary action been taken in the past?   ☑ YES   ☐ NO  
   If "YES", please answer the following.  
   1) On what date(s)? 4/4/2014 and 6/25/2014  
   2) What disciplinary action was taken?  
   Written warnings were issued to claimant.

18. Is the claimant a union member?   ☐ YES   ☑ NO  
    Please send a copy of any arbitration findings of fact regarding this issue if available

Employer Name: WILLIAM GOTTLIEB  
Form completed by (Print Name): Michael Bourne   Title: Accounting Staff  
Tel. #: (212) 989-8100   Email:  
Signature: [signature]   Date: 8/26/2014

☐ Above information obtained by phone call on

BCDNAS

NYS   10-13   MC75                                                              NYS

10/15

12



**File Comments**
**Name**    f_00770b
**Physical Size**    53248 B
**Logical Size**    51998 B
**Created Date**    8/8/2014 3:03:04 PM (2014-08-08 19:03:04 UTC)
**Modified Date**    8/8/2014 3:03:04 PM (2014-08-08 19:03:04 UTC)
**Accessed Date**    8/8/2014 3:03:04 PM (2014-08-08 19:03:04 UTC)
**Path**    02207-040_Gottlieb.E01/Partition 3/NONAME [NTFS]/[root]/Users/bstathatos/AppData/Local/Google/Chrome/User Data/Default/Cache/f_00770b
**Exported as**    Report_Files/files/f_00770b.jpg



HRG EX#____ ER EX# 5
CLMT EX#____ COL EX#____
ALJ:
INITIALS____ DATE 3/1/2015



**File Comments**
**Name** f_0067b7
**Physical Size** 86016 B
**Logical Size** 84921 B
**Created Date** 8/5/2014 5:25:28 PM (2014-08-05 21:25:28 UTC)
**Modified Date** 8/5/2014 5:25:28 PM (2014-08-05 21:25:28 UTC)
**Accessed Date** 8/5/2014 5:25:28 PM (2014-08-05 21:25:28 UTC)
**Path** .02207-040_Gottlieb.E01/Partition 3/NONAME [NTFS]/[root]/Users/bstathatos/AppData/Local/Google/Chrome/User Data/Default/Cache/f_0067b7
**Exported as** Report_Files/files/f_0067b7.jpg



**File Comments**
**Name** f_007077
**Physical Size** 32768 B
**Logical Size** 29709 B
**Created Date** 8/6/2014 3:30:55 PM (2014-08-06 19:30:55 UTC)
**Modified Date** 8/6/2014 3:30:55 PM (2014-08-06 19:30:55 UTC)
**Accessed Date** 8/6/2014 3:30:55 PM (2014-08-06 19:30:55 UTC)
**Path** 02207-040_Gottlieb.E01/Partition 3/NONAME [NTFS]/[root]/Users/bstathatos/AppData/Local/Google/Chrome/User Data/Default/Cache/f_007077
**Exported as** Report_Files/files/f_007077.png